UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

HAN TAK LEE,                          :
                                      :
          Petitioner                  :        No. 4:CV-08-1972
                                      :
     vs.                              :        Petition Filed 10/29/08)
                                      :
FRANKLIN J. TENNIS,                   :        (Judge Muir)
Superintendent, <u>et</u> <u>al</u>.,           :
                                      :
          Respondents                 :

**<u>MEMORANDUM AND ORDER</u>**

September 22, 2010

     Petitioner, Han Tak Lee, filed the instant counseled
petition for writ of habeas corpus pursuant to 28 U.S.C. §
2254. He attacks a conviction imposed by the Court of Common
Pleas for Monroe County, Pennsylvania. (Doc. 1). For the
reasons that follow, the Court will deny the petition.

## I.   **<u>Background</u>**

     The following background has been extracted from the
Pennsylvania Superior Court's August 17, 2006 Opinion affirming
the denial of Lee's petition pursuant to the Post Conviction
Relief Act (PCRA).

>     On September 17, 1990, a jury convicted Han Tak Lee
>     of first degree murder and arson in connection with
>     a fire that occurred at a religious retreat in the
>     Pocono Mountains. Lee, his 20-year-old daughter, and

a minister went to the retreat on July 28, 1989 to help Lee's daughter resolve psychiatric problems she was experiencing. In the early morning hours on July 29, 1989, a fire erupted at the retreat, killing Lee's daughter. Police suspected Lee's involvement in the fire and arrested him on the basis that preliminary evidence suggested the fire was of incendiary origin. Lee's defense was that his daughter was mentally disturbed and suicidal and set the fire intentionally in order to kill herself. The Commonwealth's theory was that Lee intentionally set the fire that killed his daughter.

At trial, the Commonwealth presented the testimony of three experts to establish that the fire was incendiary in origin; Fire Marshall Thomas Jones, Thomas Pacewicz (a State Police Crime Lab chemist), and Daniel Aston. The conclusion of the Commonwealth's experts that the fire was intentionally set was not disputed by Lee. Instead, Lee argued that he was not the guilty party and that the evidence would just as likely establish that his daughter set the fire. Lee's original trial counsel did not put an arson expert on the stand at trial, because his consulting expert, Dr. De Forest, could not rule out arson or state that it was an electrical fire.

After Lee was convicted of first degree murder and arson, the trial judge sentenced him to a mandatory term of life imprisonment without parole. Lee appealed his convictions to this Court, arguing among other things, that his trial counsel was ineffective for failing to present Dr. De Forest or an arson expert to refute the Commonwealth's experts' opinion that the fire was intentionally set.[1] On November 23,

---

[1] On February 2, 1993, before Lee's direct appeal was briefed, or argued, the Superior Court granted Lee's petition for a remand hearing on the claim of ineffective assistance of trial counsel. (Doc. 7, Ex. 4, App. E, Opinion of Court of

1993, this Court rejected Lee's ineffective
assistance of counsel arguments and affirmed Lee's
conviction. See Commonwealth v. Lee, 639 A.2d 840
(Pa. Super. 1993)(mem. adopting trial court's
opinion).[2] The Supreme Court subsequently denied
Lee's petition for allowance of appeal in Lee v.
Commonwealth, 645 A.2d 1317 (Pa. 1994)(per curiam).

On August 31, 1995, Lee filed his first PCRA
petition. Due to changes of counsel and other
factors, an Amended Petition for Relief was not filed
until May 2, 2005. In his amended petition, Lee
attached the affidavit of John Lentini, an arson
expert. Mr. Lentini's affidavit detailed certain

Common Pleas of Monroe County). On March 31, 1993, following
an evidentiary hearing and the submission of briefs, Lee's
claims were denied by the Court of Common Please for Monroe
County. Id.

[2]The Superior Court affirmed the conviction and sentence
in a two page unpublished memorandum adopting the trial
Court's opinion as the basis for its action by stating the
following:

> On this appeal, Lee raises twelve instances of trial
> counsel's ineffectiveness in his one hundred and
> forty-seven page brief. We have completed the
> arduous task of reading the briefs, the record and
> the trial court opinion relating to this case. We
> find that the trial court has adequately and
> correctly summarized the factual and procedural
> history in its opinion. After our careful review, we
> determine that there is no merit in Lee's allegations
> of trial counsel's ineffectiveness. The Honorable
> Peter O'Brien comprehensively discusses each of Lee's
> claims and the law in support of his rulings.
> Finding no error, we affirm the judgment of sentence
> on the basis of the well-reasoned opinion and adopt
> it for purposes of allocatur.

(Doc. 7, Ex. 4, App. C, Superior Court Opinion).

scientific advances in the field of arson investigation, beginning in 1992 and continuing until the present day, and concluded that the evidence presented by the Commonwealth's experts at Lee's trial is consistent with an accidental fire. <u>See</u> Affidavit of John J. Lentini, 02/15/05, (Affidavit). Lee relied upon Mr. Lentini's affidavit to argue claims of after-discovered exculpatory evidence and ineffective assistance of appellate counsel. On November 1, 2005, the PCRA court denied Lee's claims. Lee now appeals to this Court, raising the following questions for our review:

1. Did appellant's after-discovered exculpatory evidence reflecting scientific advances, show by at least a preponderance that the outcome at trial would have been affected, by eviscerating the conclusion that arson was committed?

   a. Does the presentation of evidence of exculpatory scientific discoveries, post-dating the trial, constitute a mere credibility challenge to the trial witnesses?

   b. Does the presentation of evidence of now-generally accepted scientific understandings about the behavior of fires, which post-date the trial and post-trial motions, constitute a different claim from the assertion on appeal of ineffective assistance of trial counsel?

   c. Did the PCRA court err in dismissing (without any record or factual foundation) defendant's nationally renowned expert as someone simply "willing to take a fee" for a favorable opinion, and therefore discounting his uncontradicted information?

> d. Did the PCRA court err in holding petitioner to a higher standard than the statute requires for the granting of a new trial based on after-discovered evidence?
>
> 2. Did the PCRA Court misapprehend Petitioner's claim of ineffective assistance of direct appeal counsel, where a claim of after-discovered evidence made on direct appeal would have been stronger than the related and meritless trial counsel ineffectiveness claim which counsel did raise?

_Commonwealth v. Lee_, 911 A.2d 182 (Pa. Super. 2006) (unpublished memorandum). By Memorandum Order filed August 17, 2006, the Pennsylvania Superior Court affirmed the PCRA court's denial of Lee's PCRA petition. _Id_.[3] Petitioner filed for allowance of appeal to the Pennsylvania Supreme Court, which was denied on October 30, 2007. _Commonwealth v. Lee_, 594 Pa. 695, 934 A.2d 1276 (Pa. Oct 30, 2007) (Table, No. 1008 MAL 2006).

On October 29, 2008, Lee filed the instant petition for writ of habeas corpus in which he raises the following

---

[3]The Superior Court of Pennsylvania in affirming the PCRA court's denial of Lee's PCRA petition made the following finding: "After careful review, we reject Lee's assertion that the Commonwealth's methodology was scientifically invalid. Instead, we find that the [National Fire Protection Association] guide and other modern publications that Mr. Lentini cites would be used only to impeach the accuracy and credibility of the Commonwealth's experts' relied-upon texts and ultimate conclusions that the fire was of incendiary origin."

challenges to his conviction and sentence:

> 1. Counsel on direct appeal rendered ineffective assistance to petitioner, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States.

> 2. Petitioner's convictions were based upon inaccurate and unreliable evidence, in violation of his right to Due Process under the Fourteenth Amendment to the United States Constitution, because his convictions were based on evidence premised on beliefs and practices of arson investigation which have, since the time of trial, been discovered and proven to be scientifically invalid.

> 3. Petitioner is incarcerated based upon a conviction for a crime of which newly developed scientific evidence persuasively shows he is probably innocent, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Testimony for the Commonwealth presented at trial that purported to be scientific is now known to be erroneous. There is no other substantial evidence of guilt. With the benefit of accurate scientific information about fires, it is more likely than not that no reasonable juror would have found the evidence sufficient to find guilt beyond a reasonable doubt.

> 4. Petitioner's trial counsel rendered ineffective assistance in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. 1, petition).

6

In accordance with <u>United States v. Miller</u>, 197 F.3d 644 (3d Cir. 1999) and <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Lee that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeal, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act ("AEDPA"). (Doc. 2). On December 23, 2008, Lee returned the notice of election form, indicating that he wished to proceed with the petition for writ of habeas corpus as filed. (Doc. 3). Thus, a Show Cause Order was issued on December 30, 2008. (Doc. 4). A response and traverse having been filed, the petition is now ripe for disposition.

## II. <u>Standards of Review</u>

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal

7

habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

## A. **Exhaustion**

"A federal court may not grant a writ of habeas corpus unless (1) 'the applicant has exhausted the remedies available in the courts of the state', (2) no such state remedy is available or (3) available remedies are ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1)." Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998). "The exhaustion requirement is satisfied when the state courts have had an opportunity to pass upon and correct alleged constitutional violations." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1230 (3d Cir. 1992). The exhaustion requirement "is not a mere formality. It serves the interests of comity between the federal and state systems by allowing the

state an initial opportunity to determine and correct any violations of a federal prisoner's federal rights." <u>Gibson v. Scheidemantel</u>, 805 F.2d 135, 138 (3d Cir. 1986). "Unless it would be patently futile to do so [state prisoners] must seek relief in state court before filing a federal habeas petition...." <u>Santana v. Fenton</u>, 685 F.2d 71, 77 (3d Cir. 1982).

The habeas corpus petitioner shoulders the burden of establishing exhaustion of state court remedies. <u>McMahon v. Fulcomer</u>, 821 F.2d 934, 940 (3d Cir. 1987). The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971). "All claims that a petitioner in state custody attempts to present to a federal court for habeas review must have been fairly presented to each level of the state courts." <u>Lines v. Larkins</u>, 208 F.3d 153, 159 (3d Cir. 2000), cert. denied, 531 U.S. 1082 (2001). Fair presentation requires that the "substantial equivalent" of a petitioner's federal habeas claims be presented to the state courts. <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997).

The respondent concedes that Petitioner has exhausted his state court remedies. The merits of the claims will therefore be addressed.

**B.  <u>Merits</u>**

"The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002). Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d) (1).[4]   <u>See generally</u>, <u>Knowles v.</u>

_____

[4]Specifically, 28 U.S.C. § 2254(d)(1) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

_Mirzayance_, --- U.S. ----, ---- - ----, 129 S.Ct. 1411, 1418-19, 173 L.Ed.2d 251 (2009); _Gattis v. Snyder_, 278 F.3d 222, 234 (3d Cir.2002); _Moore v. Morton_, 255 F.3d 95, 104-05 (3d Cir.2001). The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. _Williams v. Taylor_, 529 U.S. 362, 404-405 (2000). As explained in _Bell_:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable ....
> _Bell_, 535 U.S. at 694 (citations omitted).

In a recently announced decision, _Renico v. Lett_, --- U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010), the United States Supreme Court, quoting _Williams_, explained that "an unreasonable application of federal law is different from an

law, as determined by the Supreme Court of the United States; ....

11

incorrect application of federal law." Id. at 1862. Therefore, a federal court may not grant habeas relief simply because it has concluded in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly.[5] Id. Rather, the state court application must be objectively unreasonable. Renico added that this distinction creates a substantially higher threshold for obtaining relief under § 2254 and imposes a highly deferential standard for evaluating state court decisions. Simply put, "state-court decisions [must] be given the benefit of the doubt." Id. quoting Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam).

This deferential standard of review applies to state court decisions on ineffective assistance of counsel claims. Bell, 535 U.S. at 694-98. Furthermore, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not. 28 U.S.C. § 2254(e)(1).

_____

[5]"Whether the trial judge was right or wrong is not the pertinent question under the AEDPA." Id. at 1865 n. 3, 671 A.2d 773.

## III.    Discussion

We will first address Lee's second, third and fourth challenges to his conviction and sentence; and then we will address his first challenge.

### A.    Due Process Violations

In grounds two and three in his habeas petition, Lee states that his convictions were based upon inaccurate and unreliable evidence, and he is incarcerated for a crime which newly discovered scientific evidence persuasively shows he is probably innocent, in violation of his Due Process rights.

Lee argues that because "neither the Court of Common Pleas nor the Superior Court, in either of their opinions in the PCRA proceedings, referred to this essential constitutional legal bedrock upon which the newly discovered scientific evidence claim rested, the underlying due process and innocence claims were not 'adjudicated on the merits' by the state courts" and "the claims are subject to de novo review, rather than the more stringent standards set forth in 28 U.S.C. § 2254(d)(1) and (2). See Rompilla v. Beard, 545 U.S. 374, 387, 125 S.Ct. 2456, 2467 (2005); Thomas v. Varner, 428 F.3d 491, 501 (3d Cir.

2005); <u>Holloway v. Horn</u>, 355 F.3d 707, 718-19 (3d Cir. 2004)."
(Doc. 13, traverse at p. 18).

Although not presented in terms of a Due Process violation
in any of his state court briefs, Lee attempts to support his
argument that he is entitled to a de novo review by claiming
that "though the claim was stated in the state courts in the
terms required by the PCRA statute, its well-established
Constitutional underpinnings are clear, and should have been
clear to the state courts: when evidence is used against a
defendant to gain a conviction, and that evidence fails to meet
a minimum standard of reliability, the defendant's right to a
fair trial as guaranteed by the Due Process Clause of the
Fourteenth Amendment is violated..." <u>Id</u>. at p. 17 (citations
omitted). The Court finds Lee's argument unpersuasive.

In an attempt to meet the standard for federal review, Lee
couches issues two and three in terms of a Due Process
violation. However, the basis of these claims is that Lee
believes that there exists newly discovered evidence that, not
only has impeachment value, but also demonstrates his
innocence. Lee's claim of newly discovered evidence is not
cognizable under § 2254 because claims of actual innocence

based on newly discovered evidence are never grounds for federal habeas relief absent an independent constitutional violation. See Herrera v. Collins, 506 U.S. 390, 400 (1993); see also Fielder v. Varner, 379 F.3d 113, 122 (3d Cir.2004). "[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." Herrera, 506 U.S. at 400. Where, however, newly discovered evidence bearing upon the constitutionality of the petitioner's detention could not reasonably have been presented to the state courts, the federal court must grant an evidentiary hearing. Id.; also Albrecht v. Horn, 485 F.3d 103, 121 (3d Cir.2007). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." Herrera, 506 U.S. at 400.

Lee's claims of newly discovered evidence were presented to the Pennsylvania Courts in his PCRA petition, and affirmed on appeal. Thus, no evidentiary hearing is warranted here. In adjudicating Lee's claims of newly discovered evidence, the Pennsylvania Superior Court stated no new trial was warranted

because the after-discovered evidence that would have been used solely for impeachment purposes does not warrant a new trial under Pennsylvania law.[6] See Commonwealth v. Lee, No. 3237 EDA 2005, slip op. at 9 (Pa.Super.2006) (citing Commonwealth v. Nocero, 582 A.2d 376 (Pa.Super. 1990); Commonwealth v. Weis, 611 A.2d 1218 (Pa.Super.1992)).

## B.  Ineffective Assistance of Counsel

### 1.  Trial Counsel

In his fourth claim for relief, Lee contends that he is entitled to habeas relief because trial counsel, the late Robert M. Rosenblum, Esquire, was ineffective for (1) failing to call arson expert Peter R. De Forest, to rebut the Commonwealth's expert testimony regarding the theory of arson; (2) failing to obtain the gas chromatograms or to retain a chemist to examine them and to evaluate the laboratory report of the State Police Crime Lab chemist Thomas Pacewicz, who performed the gas chromatographic analysis; and (3) for eliciting testimony outside of the witnesses' areas of

---

[6]See also United States v. Cimera, 459 F.3d 452, 458 (3d Cir.2006) (applying same standard under federal law); United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir.1976).

expertise in cross-examining the fire marshal and the forensic pathologist.

Petitioner's ineffectiveness claims were raised in his direct appeal. On February 2, 1993, before Lee's direct appeal was briefed, or argued, the Superior Court granted Lee's petition for a remand hearing on Lee's claims of ineffective assistance of trial counsel. On March 31, 1993, following an evidentiary hearing and the submission of briefs, Lee's claims were denied by the Court of Common Please for Monroe County. In a decision dated November 23, 1993, the Superior Court adopted the trial court's opinion as their own and affirmed the judgment of sentence.

With respect to the above described claims of ineffective assistance, the trial court noted that Lee's trial counsel gave the following testimony in support of his strategy:

> "Q. Mr. Rosenblum, please tell us how you arrived at the decision to defend in the manner you defended this case.
>
> A. Sure, I started with the premise that there, one, was a fire; two, there was a death; and three, my client related a story to me of what occurred beginning the night or day before his arrival at Camp Hebron, and what he related to me was that the young woman who died as a result of this incident was severely disturbed the night before in their home in

New York; had been throwing things out of the window, I believe if memory serves me correctly a clock radio, or an alarm clock and a radio, with sufficient force that she managed to get this through a screened window; that she was brought to the camp basically for an exorcism of sorts.

It was indicated to me that she had a history of emotional problems that included a substantial hospitalization; that she was in fact being medicated with lithium, and that the basis of the argument the night before was her failure to take the medicine, and, as Mr. Bercaw said, I was told by both my client at the time and his wife that she has a water fetish, and that in times of stress she would lock herself in the bathroom and either bathe or shower for extremely long periods of time.

Q.  I'm sorry. Would you like to continue?

A.  Yes.  In additions to that, through our investigation we determined that her behavior at Camp Hebron on the day of or the 24-hour period prior to her death was equally bizarre; that she had behaved with great disrespect for her counselors; she had been very forward to young men at the camp; she had on occasion begun to disrobe with other people around.  She had been in the lake with her clothes on.  She had marked the spot where she wanted to be buried.

Mr. Lee advised me that at one point during the day she was in the shower for an extremely long period of time, and that water, in fact, flowed out of the shower and into the living room of this cabin, and that he had to clean it up.

There was an indication from Mr. Lee and Mrs. Lee that she had been to Camp Hebron on at least one prior occasion, and possibly more than that; that in

the late evening hours or early morning hours her behavior was so uncontrollable that it took two adult males to hold her down and pray over her. All of which led me to believe that this young woman was involved in rather bizarre behavior, and that she knew the camp, and if there were in fact an accelerant that was used in this fire, the logical persons would be her because she knew where things were at the camp; had been to the camp before, and all the evidence that I was able to unfold indicated that Mr. Lee never left the cabin or the front porch of the cabin the entire time he was there, and had never been at the camp before. My logic told me that since there was a fire, and since my expert unequivocally told me it could not have been an electrical fire, and the evidence was very strong from my expert that it could very well have been an arson fire started by a human being, that the only person that would be capable of doing that would this young woman; so that is how the defense evolved." (N.T. Remand Hearing at 183-185).

"Q. Did you also conduct an investigation of the victim's psychiatric history?

A. Yes, I did.

Q. What investigation did you conduct?

A. I took literally hundreds of pages of medical records and gave them to Dr. Taylor in an attempt to try and put something together for the jury that would be a continuum. This woman suffered severe depression. She was suicidal in the hospital. She had attacked her mother in the hospital, or so the medical records indicated. She was taking lithium, which Dr. Taylor advised me is an extremely powerful drug that alters one's personality, and the failure to take lithium could lead to this kind of outrageous behavior." (N.T. Remand Hearing at 188).

"I think it was the only strategy.  The man testifies and his statement to me is that he is asleep; that he hadn't eaten all day; hadn't slept in two days because she had been up all night the night before, and that he woke up gagging, and smelling smoke, and ran out of the cabin.  At that point I have a fire.  I have no one willing to testify that the fire was accidental; therefore, I have a fire set by a human being.  Now, that leaves me very few – – Either he did it, or she did it, or somebody else did it."  (N.T. Remand Hearing at 200).

"Q.  Is that not, in fact, your defense?

A.  No. Not at all. My defense was that the fire started by accident in her bedroom, and that she, in a panic  – – Some form of accelerant, not 66 gallons. This figure was represented by the tap that was open from the fuel tank. – – that she panicked, and the others caught, one or two, and they were all close together, so they could have ignited, and she went to the bathroom, got in the – – Wait.  You asked me a question, Mr. Oh.  You got to let me answer it.

She went to the bathroom, turned on the shower, had the window open, and that was her sanctuary, that shower.  As the fire burned, the oxygen supply began to disappear.  The door opened out.  It's the only bathroom in the work I know of where the door opens out, not in.  She leans out with the door, and is consumed, and dies right there.

I don't accept the Commonwealth's theory that she was a point of origin.  I don't know that the jury did.  I certainly don't accept the fact that she was dead when the fire started because she had soot in her lungs and in her windpipe, which says she was breathing, and I put a witness on to that effect." (N.T. Remand Hearing at 202, 203).

(Doc. 7, Ex. 4, App. E, Opinion of Court of Common Pleas of Monroe County at pp. 10-13). Counsel further testified that his decision not to call Dr. De Forest was a tactical one, and explained his strategy by stating:

> "Well, if my expert would have said to me without equivocation that this was an accidental fire not an arson fire, I would have gone with my expert. My expert did not deny the Commonwealth's accusations, and I was in a position of saying,"Well, here is this great, wonderful human being with all these credentials. What do I have left? Did somebody at this camp set this fire other than Lee, or his daughter, and who would that have been and where were they, and why?" And motive. And a bunch of reasons that were unanswerable. . . ." (N.T. Remand Hearing at 199, 200).

> "Let me finish, please. Trooper Jones, the fire marshal, placed the point of origin at the front of the building, in the doorway, and so did Daniel Aston. If I put De Forest on the witness stand, and De Forest testifies as a defense witness that a point of origin was the front of the building, the only way that fire could have been started would be for somebody outside to have thrown a flaming rage in. . ." (N.T. Remand Hearing at 201).

> "De Forest would not accept the explanation that we had, . . . so, if he was properly cross-examined, he takes Mr. Lee's story and kills it because he does not do away with the point of origin in the front, which means the front of the house is burning while Mr. Lee is running in and out, and I have no explanation why Mr. Lee's feet aren't burned, why his pants aren't burned. None." (N.T. Remand Hearing at 205, 206).

> "Well, if the point of origin were the front
> door, the only person that could have set that fire
> and lived would have been the defendant by being out
> of the cabin when the fire started, and if that were
> to go to the jury, they wouldn't haven been out 15
> minutes.  So, by putting him on the stand I was
> essentially contradicting my client's testimony and
> actually helping the Commonwealth's case by having
> someone not contradicting their testimony."  (N.T.
> Remand Hearing at 187).

(Doc. 7, Ex. 4, App. E, Opinion of Court of Common Pleas of

Monroe County at pp. 7-8). Despite the fact that this strategy

ultimately proved to be unsuccessful, trial counsel stated that

it was nonetheless reasonable.

With respect to Lee's allegation that trial counsel was

ineffective for failing to independently examine the gas

chromatograms, the trial court found the following:

> Trial counsel's defense strategy was not to contest
> that accelerants were present in the house or on
> Defendant's clothing.  The presence of an accelerant
> of whatever nature was consistent with Defendant's
> testimony that he slipped and fell and got something
> on his pants when re-entering the cabin to save his
> daughter.  (N.T. Trial at 705).

(Doc. 7, Ex. 4, App. E, Opinion of Court of Common Pleas of

Monroe County at pp. 6-7).

In addressing Lee's third allegation of trial counsel's

ineffectiveness with respect to the cross-examination of the

Commonwealth's witnesses, the trial court noted:

> In the case at bar, trial counsel's cross-examination
> of Commonwealth's witnesses was reasonably based upon
> a defense strategy designed to promote Defendant's
> interests. Thomas Jones, the Fire Marshal, was
> extensively questioned as to whether during his
> investigation he became aware that Defendants'
> daughter had psychiatric problems and whether he knew
> that she had been acting irrationally at the
> religious retreat the day of the fire. (N.T. Trial
> at 336-338). Jones was also questioned as to the
> possibility of Defendant's daughter being the shower
> while the cabin was burning. (N.T. Trial at 334).
> Thomas Pacewicz, an expert in the detection of
> accelerants, was questioned and agreed to an extent
> that the detection of accelerants on Defendant's
> clothing would be consistent with Defendant's
> testimony that he had slipped and fallen when re-
> entering the cabin. (N.T. Trial at 383, 384).
> Isidore Mihalikis, an expert in forensic pathology,
> was questioned by trial counsel and agreed that the
> physical evidence discovered during his examination
> of the victim could be consistent with the victim
> opening the bathroom door and being consumed by
> walking into a wall of fire. (N.T. Trial 421, 422).
> Additionally, on cross-examination Dr. Mihalikis,
> stated that deposits of smoke were found in the
> victim's mouth, throat, trachea and lungs. (N.T.
> Trial at 423, 424). This would support trial
> counsel's theory that the victim was still alive
> while the cabin was burning. Finally, Daniel Aston,
> an expert on the cause of fire, responded to trial
> counsel's cross-examination by stating that it was
> conceivable that the fire started in the back of the
> cabin and moved up the sloping roof (N.T. Trial at
> 557) and that the absence of intense heat in the
> bathroom could have been due to the water running
> through the bathroom pipes. (N.T. Trial at 569).

(Doc. 7, Ex. 4, App. E, Opinion of Court of Common Pleas of

23

Monroe County at pp. 15-16).

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme Court established a two-pronged test for habeas petitioners seeking relief on the basis of ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir.2001). That is, he must show that counsel's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. There exists a "strong presumption" that trial counsel's performance was reasonable and might be considered sound trial strategy. Jermyn, 266 F.3d at 282 (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir.1996)); Strickland, 466 U.S. at 690.

Second, a petitioner must show that he was prejudiced by the deficient performance. Strickland, 466 U.S. at 687. The prejudice test is whether there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "Without proof of both deficient performance and prejudice to the defense ... it

could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell, 535 U.S. at 695 (internal quotations and citation omitted).

Where there is a reasonable basis for a tactical decision made by defense counsel, a finding of ineffective assistance cannot be reached. See Burger v. Kemp, 483 U.S. 776 (1987). In other words, "substantial deference is to be accorded counsel's tactical decisions." United States v. Wiener, 127 F.Supp.2d 645, 648 (M.D.Pa.2001). Furthermore, "reviewing courts must be deferential in their scrutiny and scrupulously avoid the distortions of hindsight by viewing performance from counsel's perspective at the time." Everett v. Beard, 290 F.3d 500, 509 (3d Cir.2002). Finally, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, --- U.S. ----, ----, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009).

When the Pennsylvania state courts reviewed the claims raised by Lee, Strickland's familiar two-pronged test was the

"clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the Strickland test. See, e.g., Commonwealth v. Johnson, 565 Pa. 51, 771 A.2d 751, 757 (Pa.2001). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir.2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir.2000). Thus, under § 2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania state court decision involved an unreasonable application of Strickland. Jacobs, 395 F.3d at 107 n. 9; Werts, 228 F.3d at 204.

Lee's claims boil down to his dissatisfaction of the choices made by his criminal defense attorney. The state courts found that defense counsel made a determination that his client's best interests would be served by pursuing a defense based solely on the theory that the daughter started the fire, which he felt would lead the jury to conclude that Lee did not

start the fire.

Lee has not shown that the state court's rejection of his ineffective assistance of counsel claims represented an unreasonable application of clearly established federal law. The state courts found that there was a tactical basis for trial counsel's decisions, and that factual determination is binding in federal court. See Berryman v. Morton, 100 F.3d 1089, 1095 (3d Cir.1996). "Under the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard," Knowles, 129 S.Ct. at 1420, Lee's claim that his defense counsel was ineffective fails. As explained in Price v. Wynder, 350 F. App'x. 692, 695 (3d Cir.2009), "[w]ith respect to the PCRA court's application of federal law, Strickland mandates deference to tactical decisions made by trial attorneys and [the habeas statute] mandates deference to state court decisions interpreting Strickland." It was reasonable in this case for the state courts to conclude that Strickland affords counsel discretion to make judgments as to what witnesses to call, what evidence to impeach and what evidence may be used to a client's advantage if not impeached. The state courts found that

defense counsel articulated a reasonably sound basis for his approach in not using Dr. De Forest as an expert witness, in not independently examining the gas chromatograms and in his questioning of the Commonwealth witnesses, and that finding is not unreasonable. See Henderson v. DiGuglielmo, 138 F. App'x. 463, 470 (3d Cir.2005) ("Counsel's decision not to introduce testimony potentially in conflict with the central defense strategy is not unreasonable.").

Accordingly, with respect to the decision of trial counsel to base Lee's defense on the theory that the daughter started the fire, the state court's finding that counsel's performance was reasonable has not been shown to be an unreasonable application of Strickland. Thus, Petitioner is not entitled to habeas corpus relief on the basis of ineffective assistance of trial counsel.

### 2. Appellate Counsel

Lee in his first ground for relief claims that his counsel was ineffective by failing to raise on direct appeal a claim that there was newly discovered evidence which entitled him to a new trial.

The Strickland test also applies to claims of ineffective

assistance of appellate counsel. A petitioner is first required to show that appellate counsel's actions fell outside "the wide range of reasonable professional assistance; that is, [Petitioner would have to] overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [appellate] strategy.' " <u>Buehl v. Vaughn</u>, 166 F.3d 163, 173 (3d Cir.1999) ( citing <u>Strickland</u>, 466 U.S. at 689). After overcoming the presumption of reasonableness, petitioner must then show that the deficient representation of appellate counsel prejudiced him. <u>Id</u>. A petitioner satisfies <u>Strickland's</u> prejudice prong by demonstrating a reasonable probability that he would have prevailed on appeal if the issue had been presented. <u>Smith v. Robbins</u>, 528 U.S. 259, 285(2000).

In rejecting Lee's claim that direct appellate counsel was ineffective for failing to advance an after-discovered evidence argument on direct appeal, the Superior Court found that under Pennsylvania law "[t]he threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim.

<u>Commonwealth v. Durst</u>, 559 A.2d 504, 404 (Pa. 1989)." (Doc. 7, Ex. 4, App. C, Superior Court Opinion at p. 15).

The Court noted that "[a]s previously mentioned, we found Lee's after-discovered exculpatory evidence argument to be meritless, because Mr. Lentini's affidavit would be used solely to impeach the credibility of the Commonwealth's experts." <u>Id</u>. Thus, the Superior Court concluded that Lee's appellate counsel could not be considered ineffective for failing to assert a meritless claim. <u>Id</u>.

Accordingly, this Court concludes that the state court's determination of this claim is reasonable, as counsel cannot be ineffective for failing to raise a meritless claim. <u>See</u> 28 U.S.C. § 2254(d)(1); <u>see also</u> <u>Buehl</u>, 166 F.3d at 173 (appellate counsel not ineffective for failing to raise meritless claim of trial counsel ineffectiveness); <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir.1999) (counsel cannot be deemed ineffective for failing to raise a meritless issue). Thus, Lee is not entitled to habeas relief.

An appropriate Order accompanies this Memorandum Opinion.

Dated: September 22, 2010    s/Malcolm Muir
                             MUIR
                             United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

HAN TAK LEE,                          :
                                      :
          Petitioner                  :        No. 4:CV-08-1972
                                      :
     vs.                              :        Petition Filed 10/29/08)
                                      :
FRANKLIN J. TENNIS,                   :        (Judge Muir)
Superintendent, et al.,               :
                                      :
          Respondents                 :

**<u>ORDER</u>**

September 22, 2010

For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1.   The petition for writ of habeas corpus (Doc.
     1), is **DENIED**.

2.   The Clerk of Court is directed to **CLOSE** this
     case.

3.   There is no basis for the issuance of a
     certificate of appealabilty.  <u>See</u> 28 U.S.C.
     § 2253(c).

                    s/Malcolm Muir
                    MUIR
                    United States District Judge