UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAN TAK LEE, Petitioner | : | No. 4:CV-08-1972 |
| v. | : | (Judge Nealon) |
| FRANKLIN J. TENNIS, Superintendent, et al., Respondents | : | |

**MEMORANDUM**

Presently before the Court for disposition is Magistrate Judge Martin C. Carlson's October 13, 2015 Report and Recommendation, recommending that Petitioner's motion for final relief on remand be denied. (Doc. 119, Report and Recommendation). Petitioner has filed objections to the Report and Recommendation. (Docs. 120, 121). For the reasons set forth below, the Court respectfully declines to adopt the Report and Recommendation, in its entirety, and Petitioner's motion for final relief on remand will be granted, in part, and denied, in part.

## I. Background

The following background, as set forth by the United States Court of Appeals for the Third Circuit, in Han Tak Lee v. Glunt, 667 F.3d 397 (3d Cir. 2012), is as follows:

## A. Convictions and Direct Appeals

Lee was convicted on September 17, 1990 after an eight-day jury trial during which Lee's attorney had argued that Lee's daughter was mentally ill and had set the fire as a suicidal act. Post-verdict motions were denied and Lee was sentenced to life without the possibility of parole. Lee appealed his convictions to the Superior Court of Pennsylvania, which remanded to the trial court for an evidentiary hearing on Lee's claims of ineffective assistance of counsel. During that hearing, the court received substantial evidence about developments in the field of fire science, including testimony from fire expert John J. Lentini.[1] This evidence provided ample reason to question the reliability of the arson investigation.

Nevertheless, the trial court held that Lee had failed to establish that trial counsel was ineffective despite, *inter alia*, trial counsel's failure to discredit the Commonwealth's expert witnesses or to argue that the fire was accidental. Lee filed a direct appeal in the Superior Court of Pennsylvania, arguing that trial counsel was ineffective. The Superior Court affirmed Lee's convictions and sentence, and the Pennsylvania Supreme Court denied allowance of an appeal.

## B. Post-Conviction Relief Act (PCRA)

In 1995, Lee filed a *pro se* petition for relief under the PCRA in the Court of Common Pleas of Monroe County, Pennsylvania. Inexplicably, the Commonwealth did not comply with the court's order to file a response, and the petition sat dormant until the attorney who is now representing Lee in this case requested leave to file an amended petition in 2001. Lee's attorney also requested an order granting access to evidence and scientific records that were in the possession of the state police. The District Attorney consented to this disclosure, but the PCRA judge

[1]John J. Lentini has undergone extensive training in the field of fire investigation. He has published numerous articles on the subject and has provided expert testimony in over two hundred cases involving fires. He has testified in both civil and criminal cases for plaintiffs and defendants, and he has also served as an expert to advise the court. The Commonwealth does not challenge Lentini's qualification as an expert.

refused to allow it, stating merely that it was "unduly burdensome on the State Police." App. at 103.

Lee's attorney filed an amended petition for relief under the PCRA in 2005, which argued that (1) Lee was entitled to a new trial because of exculpatory evidence (in the form of newly discovered scientific information about fires) that was unavailable at the time of trial, and (2) appellate counsel was ineffective in the direct appeal by failing to raise a claim of after-discovered exculpatory evidence in addition to the ineffective assistance claim he had raised. An affidavit from fire expert John J. Lentini explaining developments in fire science since the time of Lee's trial was attached to the amended petition.

The Court of Common Pleas held oral argument and ultimately denied the petition for PCRA relief. In affirming the denial of Lee's PCRA petition, the Superior Court of Pennsylvania concluded that the Lentini affidavit would be "used solely to impeach the Commonwealth's experts' credibility and to contradict their opinion that the fire was of incendiary origin." App. at 67. The court also "reject[ed] Lee's assertion that the Commonwealth's methodology [for arson investigation] was scientifically invalid" because Lentini's affidavit "merely challeng[ed] the varying degrees of significance that are attributed to the generally accepted components of arson investigation." App. at 72-73. Under Pennsylvania law, "[a] new trial may be granted on the theory of after discovered evidence only if the new evidence . . . [, *inter alia*,] will not be used solely for impeaching the credibility of a witness." App. at 66. This was the reason given by the Superior Court to deny relief on this claim. The Superior Court of Pennsylvania then denied Lee's application for reconsideration or re-argument en banc, and the Supreme Court of Pennsylvania denied Lee's application for allowance of appeal.

### C. <u>Federal Habeas</u>

Lee filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the District Court for the Middle District of Pennsylvania, arguing that (1) appellate counsel was ineffective, (2) Lee's due process rights were violated because his convictions were based on inaccurate and unreliable evidence, (3) Lee is incarcerated in violation of due

process because newly developed scientific evidence shows that he is probably innocent of the crimes of which he was convicted and there is no other substantial evidence of guilt, and (4) trial counsel was ineffective. The District Court noted that "[t]he respondent concede[d] that Petitioner has exhausted his state court remedies," App. at 11, and the Commonwealth has conceded that Lee raised these federal issues in his state court proceedings. *See* Appellee's Br. 8 ("[A]ll of the appellant's claims have been heard by the state court system."); *see also Albrecht v. Horn*, 485 F.3d 103, 124 (3d Cir. 2007) ("Ultimately, the state post-conviction claim was not very different from the federal habeas claim [because the] essential factual and legal substance of the innocence/unreliable fire science claim was presented at both the trial and state Supreme Court levels.").

The District Court denied the petition for habeas relief, reasoning that "Lee's claim of newly discovered evidence is not cognizable under § 2254 because claims of actual innocence based on newly discovered evidence are never grounds for federal habeas relief absent an independent constitutional violation." App. at 15-16 (citations omitted). The District Court also concluded that no evidentiary hearing was warranted because "Lee's claims of newly discovered evidence were presented to the Pennsylvania Courts in his PCRA petition, and affirmed on appeal." *Id.* at 16. The District Court noted the Superior Court's conclusion that "the after-discovered evidence that would have been used solely for impeachment purposes [did] not warrant a new trial under Pennsylvania law." *Id.* at 17. The District Court also denied Lee's ineffective assistance claims.[2]

Lee appealed. The Pennsylvania Innocence Project – a non-profit legal clinic housed at Temple University School of Law and dedicated to providing pro bono legal and/or investigative services to prisoners for whom evidence discovered post-conviction can provide conclusive proof of innocence – filed an amicus brief in this court, arguing that "the

---

[2]Because Lee's request for a certificate of appealability was granted only as to the claims related to his alleged actual innocence, we do not address his ineffective assistance claims.

> federal Constitution provides an avenue through [which] the truly innocent may obtain their freedom, notwithstanding the lack of any underlying constitutional violations." Amicus Br. at 2.

Han Tak Lee, 667 F.3d at 400-402.

Finding that Lee was entitled to further discovery regarding his claims concerning the invalidity of the prior fire science evidence submitted to the jury in this case, id. at 405, the United States Court of Appeals for the Third Circuit reversed the District Court's judgment, concluding that:

> If Lee's expert's independent analysis of the fire scene evidence – applying principles from new developments in fire science – shows that the fire expert testimony at Lee's trial was fundamentally unreliable, then Lee will be entitled to federal habeas relief on his due process claim.

Id. at 407-08. In remanding for discovery and further evidentiary proceedings, the Court of Appeals defined the standard that Lee must meet to obtain federal habeas corpus relief as follows:

> To succeed, Lee must show that the admission of the fire expert testimony "undermined the fundamental fairness of the entire trial," Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.2001), because "the probative value of [the fire expert] evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission." Bisaccia v. Attorney Gen., 623 F.2d 307, 313 (3d Cir.1980) (quoting United States ex rel. Bibbs v. Twomey, 506 F.2d 1220, 1223 (7th Cir.1974)).

Id. at 403.

At the conclusion of Lee's post-conviction discovery, pursuant to 28 U.S.C. § 636(b)(1)(B), this matter was referred to Magistrate Judge Martin C. Carlson for an

evidentiary hearing and the preparation of a Report and Recommendation, in accordance with the remand of the United States Court of Appeals for the Third Circuit. (Doc. 57, Order) (citing 28 U.S.C. § 636 (b)(1)). See also 28U.S.C. Sec. 2255, Proc. R. 8(b) (stating that when an evidentiary hearing on a section 2255 motion is ordered, a "judge may, under 28 U.S.C. § 636(b), refer the motion to a magistrate judge to conduct hearings and to file proposed findings of fact and recommendations for disposition").

Magistrate Judge Carlson held an evidentiary hearing on May 29, 2014. (Doc. 77). On June 13, 2014, Magistrate Judge Carlson filed a Report and Recommendation, recommending that the petition be conditionally granted, Lee's conviction and sentence be vacated, and the Commonwealth be directed to either retry Lee within 120 days, or release him. (Doc. 80).

By Memorandum and Order dated August 8, 2014, Magistrate Judge Carlson's Report and Recommendation was adopted, the petition for writ of habeas corpus was conditionally granted in that Petitioner's state conviction and sentence was vacated and the matter was remanded to the Monroe County Court of Common Pleas, to either retry the Petitioner within 120 days or release him. (Docs. 92, 93).

On August 11, 2014, Petitioner, pursuant to Fed.R.App.P. 23(c), filed a motion for immediate release during pendency of conditional writ and pending of any appeal. (Doc. 94).

By Order dated August 19, 2014, Petitioner's Rule 23(c) motion for immediate release during pendency of conditional writ and pending any appeal was granted and the matter was referred to Magistrate Judge Carlson for further determination as to the conditions regarding Petitioner's release. (Doc. 97). By Memorandum and Order dated August 22, 2014, the conditions of Petitioner's release were set and Petitioner was released pursuant to those conditions. (Docs. 101-103).

On September 8, 2014, Respondent filed a notice of appeal of this Court's August 8, 2014 Memorandum and Order adopting Magistrate Judge Carlson's Report and Recommendation. (Doc. 105).

On August 19, 2015, the Court of Appeals affirmed this Court's August 8, 2014 decision granting Lee habeas relief. Han Tak Lee v. Houtzdale SCI, 79 F.3d 159, 169 (3d Cir. 2015). On September 10, 2015, the Court of Appeals issued its mandate affirming this Court's Order granting Lee habeas relief. (Doc. 114).

On September 14, 2015, Petitioner filed a motion for final relief on remand in which Petitioner requests the following: (1) an order making the formerly conditional writ absolute and unconditional, thus releasing Mr. Lee from all forms of custody

arising out of his 1990 conviction in the Court of Common Pleas for Monroe County; (2) an order releasing Mr. Lee from his obligations under the bond set by this Court on August 19, 2014; and (3) an order barring any future criminal charges or proceedings against Mr. Lee arising out of the fire at Camp Hebron on July 29, 1989, and the resulting death of his daughter. (Doc. 115).

On September 28, 2015, Respondent filed a response to Petitioner's motion, stating that they were currently in the process of preparing a writ of certiorari to the United States Supreme Court to be filed on or before November 17, 2015, and suggesting that "since the period for the Respondent to petition for a writ of certiorari has not yet expired, Petitioner's motion should not yet be granted as all avenues of review have not yet expired." (Doc. 117). Petitioner filed a reply brief on September 30, 2015. (Doc. 118).

On October 13, 2015, Magistrate Judge issued a Report and Recommendation recommending that "the district court, consistent with the mandate of the court of appeals, direct that: 'The matter is REMANDED to the Court of Common Pleas of Monroe County; Within 120 days, [of the issuance of the mandate by the court of appeals] the Commonwealth of Pennsylvania shall either retry Han Tak Lee or release him . . . .' Lee v. Tennis, No. 4:CV-08-1972, 2014 WL 3900230, at *7 (M.D. Pa. Aug. 8, 2014) aff'd sub nom. Han Tak Lee v. Houtzdale SCI, 798 F.3d 159 (3d Cir.

2015)." (Doc. 119, p. 6). Magistrate Judge Carlson further recommends that "if the Commonwealth wishes to delay the effect of the appellate court's mandate, it should be directed to file a motion for stay, with either the court of appeals or the United States Supreme Court, which satisfies the standards demanded by law for such extraordinary relief." (Id.).

On October 27, 2015, Petitioner filed objections to the Report and Recommendation. (Doc. 120). Petitioner raises the following objections to the Report and Recommendation:

1. Petitioner objects to the Magistrate Judge's assumption or interpretation that the mandate of the Court of Appeals affirming this Court's order to retry Mr. Lee "within 120 days" had the effect of allowing a new 120 days from the Third Circuit's decision (or worse, from the date of the mandate, a month later).

2. Petitioner objects to the Magistrate Judge's recommendation that the respondents be allowed an entirely new 120 days from the issuance of the Third Circuit's mandate, i.e., from September 10, 2015, to initiate a retrial of Mr. Lee.

3. Petitioner objects to the Magistrate Judge's assertion that the relief Mr. Lee now seeks is inconsistent with the Third Circuit's mandate.

4. Petitioner objects to the Magistrate Judge's failure to rule on the second form of relief that Mr. Lee sought – exoneration of the bond he signed before this Court on August 22, 2014.

5. Petitioner objects to the failure of the Magistrate Judge to require the respondents to state forthrightly to this Court, on the record, what their intentions are with respect to this case.

6. Petitioner objects to the reasoning of the Magistrate Judge in rejecting Mr. Lee's argument for an amended order barring any further prosecution.

7. Petitioner objects to the failure of the Magistrate Judge to recognize that this Court continues to have remedial discretion, after issuance of the mandate, to fashion final relief that is not inconsistent with that mandate in light of the passage of time and other changes of circumstances.

(Doc. 120). On November 24, 2015, Petitioner filed a supplemental submission in support of his objections to Magistrate Carlson's October 13, 2015 Report and Recommendation. (Doc. 121). No response or objections were filed on behalf of Respondent.

## II. Standard of Review

When objections to a Report and Recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the

judicial process"); Mutombo v. Carl, 2003 U.S. Dist. LEXIS 27124 (M.D. Pa. 2003) (Kane, J.).

Federal Rule of Civil Procedure 72 provides that a party may serve and file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72. Local Rule of Civil Procedure 72.3 goes on to indicate that such written objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." M.D. PA. R. 72.3. In other words, an objecting party must identify specific errors in the Magistrate Judge's analysis without simply rehashing arguments already raised to the Magistrate Judge. As explained by one federal district court:

> If the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel, consistent with the [Federal Rule of Civil Procedure], can in good conscience complain to the district judge that an objection to a particular finding or recommendation is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law ..." The federal procedural scheme thus calls for rifle-shot objections, and its legitimate purposes are frustrated by a vague gunshot blast ...

Sackall v. Heckler, 104 F.R.D. 401, 402–03 (D.R.I. 1984); see also Goney v. Clark, 749 F.2d at 6 ("We are satisfied that providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process."). The district

court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1)(C); M.D. PA. R. 72.3.

## III. Discussion

"[T]he focus of the writ is an inquiry 'into the legality of the prisoner's detention'." Fay v. Noia, 372 U.S. 391 (1963), overruled on other grounds by Coleman v. Thompson, 501 U.S. 722, (1991). "Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power...." Fay, 372 U.S. at 430–31. Accordingly, a federal court is limited to a single remedy if the writ of habeas corpus issues: "to direct the liberation of a state prisoner whose confinement violates federal law." Smith v. Lucas, 9 F.3d 359, 366 (5th Cir. 1992). When the district court issues the writ, it may order that the petitioner be released immediately, or it may make his release conditional:

> "Where a state prisoner has obtained from a district court a decision that his state confinement is unlawful, he is entitled to an order that such confinement be ended. The district court's final order may be in one of two forms. It may unconditionally order the prisoner's release, or it may order his release at some time in the near future if, in the meantime, he has not been afforded a new trial."

Carter v. Rafferty, 781 F.2d 993, 994 n.2 (3d Cir. 1986), overruled on other grounds by Hilton v. Braunskill, 481 U.S. 770 (1987) (quoting United States ex rel. Thomas v.

State of New Jersey, 472 F.2d 735, 742 (3d Cir.1973)). By issuing a conditional writ, the federal court has already determined that a state prisoner is being held in violation of federal law and that the court has authority to command the prisoner's immediate release. Smith, 9 F.3d at 366–67. The court chooses, however, to delay the issuance of the writ for a specified period of time to afford the state an opportunity to remedy the infirmity. Id.; Hilton v. Braunskill, 481 U.S. 770, 775 (1987). The conditional nature of the writ provides the state with a finite window of time in which to correct the constitutional violation. Once corrected, the state prisoner is no longer confined in violation of federal law and habeas relief is therefore inappropriate.

"Conditional orders are essentially accommodations accorded to the state." Phifer v. Warden, 53 F.3d 859, 864–65 (7th Cir. 1995). If the state chooses to timely act and correct the violation forming the basis of the issuance of the conditional writ, the writ will not issue. If, on the other hand, the state chooses not to act or timely obtain a stay, and fails to cure the error within the deadline established by the federal court in the conditional writ, the writ issues and the prisoner must be released. See Id. at 865 ("Failure to cure that error, however, justifies the district court's release of the petitioner"); Smith, 9 F.3d at 366 ("the district court is to grant the writ unless the State takes action to remedy the infirmity in the death sentence"); Hammontree v. Phelps, 605 F.2d 1371, 1381 (5th Cir. 1979) ("We suggest that the state be given a

reasonable time, say ninety days, within which to retry the petitioner; otherwise, it must permanently discharge him from custody").

The framework of the conditional order implicitly requires a district court to assess the state's compliance with its mandate. See Phifer, 53 F.3d at 865. However, certain factual situations obviate the necessity of making such a finding—where, as in the instant case, a court orders a new trial or release and, absent a stay, the state fails to provide either remedy. "In these cases, a specific assessment concerning compliance may be unnecessary—the writ will simply issue because it is apparent that the state has not fulfilled the mandate." Id.

In the instant action, the Commonwealth had 120 days from August 8, 2014, to either retry or release Lee. Lee v. Tennis, No. 4:CV-08-1972, 2014 WL 3900230, at *7 (M.D. Pa. Aug. 8, 2014). It is undisputed that the Commonwealth did not comply with this mandate. If a stay pursuant to Fed.R.App.P. 8(a)(1)(A) had been sought and granted within the 120 days, the Commonwealth would have been temporarily absolved of its duty to act pending resolution of its timely filed appeal, and the conditions triggering the issuance of the writ would have been suspended. The Commonwealth, however, did not act in a timely fashion, and cannot preclude the issuance of the writ because the window of opportunity afforded by the conditional order has passed. Consequently, once the 120 day window for the Commonwealth's

retrial of Lee had passed without the Commonwealth taking any action to retry him, the conditional writ became absolute and the Commonwealth could no longer imprison Lee. Wilson v. Beard, 2012 WL 1382447 (E.D. Pa. April 20, 2012) (finding that district court's April 19, 2004 Order conditionally granted writ and permitted Commonwealth to retry Wilson within 180 days, after which the writ became unconditional). Accordingly, the Court will sustain Petitioner's objections to the Report and Recommendation, and grant Petitioner's motion to enforce the judgment on remand, as to the unconditional granting of the writ and releasing Petitioner from bond.

Lee argues that his release should be unconditional, and asks this Court to bar the Commonwealth from retrying him.

Federal district courts have "broad discretion in conditioning a judgment granting habeas relief." Hilton v. Braunskill, 481 U.S. 770, 775 (1987). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." Id. (quotation omitted). The typical remedy in habeas corpus is physical release. "Habeas exists 'to enforce the right of personal liberty; when that right is denied and a person is confined, the federal court has the power to release him. Indeed, it has no other power; ... it can only act on the body of the petitioner'." Zalawadia v. Ashcroft, 371 F.3d 292, 299 (5th Cir. 2004) (omission in

original) (quoting Fay v. Noia, 372 U.S. 391, 430–31 (1963)); see also Carson v. Johnson, 112 F.3d 818, 820 (5th Cir. 1997) ("A habeas petition ... is the proper vehicle to seek release from custody."). The physical release required by the writ, however, is not necessarily unconditional. Courts generally allow for the release of a prisoner subject to the state's right to detain him on the underlying indictment. As in Irvin v. Dowd, the Supreme Court granted habeas relief but noted that the "petitioner is still subject to custody under the indictment filed by the State ... and may be tried on this or another indictment." 366 U.S. 717, 728 (1961); see also Chessman v. Teets, 354 U.S. 156, 166 (1957) ("We ... remand the case to the District Court, with instructions to enter such orders as may be appropriate to allow California a reasonable time within which to take further proceedings not inconsistent with this opinion, failing which the petitioner shall be discharged.").

An order conditionally dismissing the underlying indictment is warranted only in narrow circumstances. Because the habeas court can act solely on the body of the prisoner, it ordinarily lacks the power to order the dismissal of an indictment. Even when the state fails to retry a defendant within the time set by a habeas court so that the writ issues, freeing the defendant, the state is generally free to re-arrest and retry the defendant on the original indictment. See Moore v. Zant, 972 F.2d 318, 320 (11th Cir. 1992) ("[I]f the state fails to correct the defect within the given time and the

prisoner is released from custody, the state may ordinarily still rearrest and reprosecute that person.").

In rare circumstances, a habeas court can end a state criminal proceeding as part of the habeas remedy. If the constitutional problem that led to the grant of the writ cannot be cured by a new trial—for example, if a double jeopardy violation merits habeas relief—then the habeas court can permanently end the state criminal proceeding. "For a federal court to exercise its habeas corpus power to stop a state criminal proceeding 'special circumstances' must exist.... [T]he constitutional violation must be such that it cannot be remedied by another trial, or other exceptional circumstances [must] exist such that the holding of a new trial would be unjust." Capps v. Sullivan, 13 F.3d 350, 352–53 (10th Cir. 1993); see also Foster v. Lockhart, 9 F.3d 722, 727 (8th Cir. 1993) ("[Banning a retrial] is an extraordinary remedy that is suitable only in certain situations, such as where a retrial itself would violate the petitioner's constitutional rights."). As the United States Court of Appeals for the Sixth Circuit has explained:

> That a petitioner's first trial was unconstitutional in some respect, generally does not mean he can never be tried again. The power to "release" a prisoner under § 2254 normally is not a power to release him forever from the underlying charge. It is the power, instead, only to release him from custody pursuant to the unconstitutional judgment.

Eddleman v. McKee, 586 F.3d 409, 413 (6th Cir. 2009); see also Scott v. Michigan State, 359 F. App'x 579, 582 (6th Cir. 2009) (stating that the state is not precluded from rearresting a successful habeas petition and "'retrying him under the same indictment'" (quoting Satterlee v. Wolfenbarger, 453 F.3d 362, 370 (6th Cir. 2006), and citing Wilkinson v. Dotson, 544 U.S. 74, 83 (2005))). Consequently, this Court finds that its August 8, 2014 Order does not, in itself, bar the Commonwealth from retrying Lee even though it failed to commence proceedings related to the retrial within the 120 day time period and that the Commonwealth's failure to retry Lee within that period did not violate the terms of the writ. As such, Petitioner's objections will be overruled, and the motion to enforce judgment on remand will be denied as to forbidding retrial.

A separate Order will be issued.

/s/William J. Nealon
**United States District Judge**

Date: January 5, 2016